IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**LANA JEAN MARICLE**                                                   **PLAINTIFF**

v.                                            **CIVIL ACTION NO. 3:20-CV-149-DMB-JMV**

**COMMISSIONER OF SOCIAL SECURITY**                         **DEFENDANT**

## REPORT AND RECOMMENDATIONS

This cause is before the Court on the Plaintiff's complaint pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable final decision of the Commissioner of the Social Security Administration regarding an application for a period of disability and disability insurance benefits ("DIB"). The matter has been assigned to the undersigned United States Magistrate Judge for issuance of a report and recommendations. Having reviewed the record, the administrative transcript, the briefs of the parties, and the applicable law and having heard oral argument; I recommend that the final decision of the Commissioner of Social Security be affirmed.

### I. ISSUES BEFORE THE COURT

For this appeal Plaintiff raises the following issues: (1) whether the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence because he failed to properly credit the claimant's complaints of pain related to fibromyalgia and (2) whether the ALJ's RFC assessment is not supported by substantial evidence because he failed to properly weigh the medical opinion of Dr. H.W. Cole.

### II. ADMINISTRATIVE/PROCEDURAL BACKGROUND

a. Procedural History

On January 19, 2017, Plaintiff protectively filed for Title II Disability Insurance Benefits

alleging disability beginning May 21, 2015, due to headaches; depression; anxiety disorder; back problems; hand, wrist, and arm problems; fibromyalgia; scoliosis; herniated disk; neck problems; and osteoarthritis in the ankle. Tr. 80-81. Plaintiff's claims were denied initially May 25, 2017, (Tr. 90) and upon reconsideration on September 26, 2017 (Tr. 105). On April 8, 2019, Administrative Law Judge ("ALJ") James F. Prothro held a hearing. Tr. 34-78. After the hearing, the ALJ issued an unfavorable decision dated April 8, 2019. Tr. 16-26. On March 24, 2020, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final agency decision. Tr. 7-9. Plaintiff filed this action seeking judicial review of the decision on May 27, 2020. Dckt. Entry #1.

    b. Administrative Decision

The ALJ followed the five-step sequential evaluation process.[1] The ALJ found Plaintiff met the insured status requirements for purposes of Title II of the Social Security Act through December 31, 2020, and had not engaged in substantial gainful activity since the alleged onset date of May 21, 2015. Tr. 18. The ALJ found Plaintiff had the following severe impairments: chronic migraines; myofascial pain syndrome and fibromyalgia; osteoarthritis of the lumbar spine, right hip, and right knee; lumbago; cervicalgia; gastroesophageal reflux disease; and depression. Tr. 18. The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 20. He found that Plaintiff had the RFC to perform light work[2] as defined in 20 CFR § 404.1567(b) with

---

[1] Under the five-step evaluation process, 20 C.F.R. §§ 404.1520(a)(4), the ALJ must decide whether: (1) the claimant is performing substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a Listing; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work.

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of

exceptions: "The claimant can frequently balance; occasionally climb ramps and stairs, stoop, crouch, or crawl; and never climb ladders, ropes, and scaffolds. She should avoid concentrated exposure to vibration, and workplace hazards. She is limited to simple work and no fast-paced work such as production work." Tr. 22. The ALJ found Plaintiff was unable to perform past relevant work but determined she was capable of performing other work in the national economy. Tr. 24-15. Thus, the ALJ determined that Plaintiff was not disabled. Tr. 25.

### III. DISCUSSION

#### A. Standard of Review and Burden of Proof

The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court recently explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive

---

arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The ALJ has the sole responsibility for determining a claimant's disability status at the hearing level. *See Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990); 20 C.F.R. §§ 404.1546(c), 416.946(c). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *See Greenspan*, 38 F.3d at 236. At step five, the Commissioner has the burden to produce "evidence about the existence of work in the national economy." *See* 20 C.F.R. §§ 404.1512(b)(3), 416.912(b)(3). The Commissioner may meet this step five burden by relying on the Medical-Vocational Guidelines or VE testimony. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). Once the Commissioner shows that a claimant's functional abilities and vocational profile would allow performing a significant number of jobs, the burden shifts to the claimant to rebut this finding. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### B. Analyses of Issues[3]

**1. The ALJ properly considered the claimant's complaints of pain related to fibromyalgia.**

---

[3] Because Plaintiff's medical history is extensive, the undersigned adopts the recitation in Plaintiff's brief—which is uncontroverted—and will not repeat it herein, except where relevant to the issues. *See* Pl.'s Br. [Dckt. 20] 3-14.

4

Plaintiff first argues the ALJ's RFC determination is unsupported by substantial evidence because he failed to properly credit her subjective complaints of pain related to fibromyalgia. Pl.'s Br. 16. Plaintiff suggests the ALJ failed to appreciate the "elusive" nature of the disease and the fact that some courts have held the ALJ must give "due consideration" to subjective evidence of limitations associated with the disease.

The ALJ is required to make affirmative findings regarding a claimant's subjective complaints. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (citing *Scharlow v. Schweiker*, 655 F.2d 645, 648–49 (5th Cir.1981)). When a plaintiff alleges disability resulting from pain, he must establish a medically determinable impairment that is capable of producing disabling pain. *See Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir.1995). Once a medical impairment is established, the subjective complaints of pain made by a claimant must be considered along with the medical evidence in determining the claimant's work capacity. *See id.*

In this case, the ALJ acknowledged that he must evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit the claimant's functional limitations. Tr. 22. The ALJ concluded that:

> the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Tr. 24. The ALJ acknowledged the plaintiff's pain from fibromyalgia and myofascial pain. He noted "[s]he complained of overall pain, headaches, disrupted sleep, and muscle spasms." Tr. 19. However, the ALJ concluded as follows:

> Notes show advice to be more active, exercise more, change her diet, and avoid day-time naps to minimize pain and facilitate better sleep. Yet, she stated movement exacerbates her pain, so she remained sedentary most of the time.

5

> Additionally, she naps in the afternoon, further disrupting sleep. . . . [T]he claimant is not compliant with physician advice.

Tr. 23. Ultimately, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 CFR § 404.1567(b) with exceptions: "The claimant can frequently balance; occasionally climb ramps and stairs, stoop, crouch, or crawl; and never climb ladders, ropes, and scaffolds. She should avoid concentrated exposure to vibration, and workplace hazards. She is limited to simple work and no fast-paced work such as production work." Tr. 22.

According to Plaintiff, the ALJ's finding of noncompliance is based on a "misrepresentation of the medical evidence." *Id.* Plaintiff points out her treating providers recommended she engage in aqua therapy and attempt a low impact activity program. *Id.* She also states Dr. Quinlan, Dr. Mendez, and other providers recommended low impact aerobics, water exercises, and walking as tolerated. *Id.* Nevertheless, she contends that because her pain was not relieved by Cymbalta or aquatic therapy, *see* Tr. 359, the ALJ's conclusion that she failed to follow prescribed treatment related to her fibromyalgia is a mischaracterization that is not supported by substantial evidence. *Id.* at 19.

Plaintiff's argument here avails her very little. First, inherent in Plaintiff's reasons for not following her doctors' recommendations (i.e., her pain was not relieved by Cymbalta or aquatic therapy) is her admission that she did not follow those recommendations. So, Plaintiff has shown no mischaracterization of the evidence by the ALJ. Furthermore, Plaintiff provides only one record citation, Tr. 359, as proof that her pain was not helped by Cymbalta or aquatic therapy. However, this record of a July 25, 2016, doctor visit proves too much as it shows Plaintiff had not yet started the aquatic therapy her doctor ordered a month prior, and Dr. Lara Quinlan increased her dosage of Cymbalta in response to her complaint it was not working. Tr. 359-364. Later, during a September 7, 2016, consult with her rheumatologist, Dr. Mendez,

Plaintiff voiced no complaints about the higher dosage of Cymbalta or aquatic therapy and was continued on both. Tr. 353-358. Interestingly, Plaintiff offers no explanation as to why she failed to comply with her doctor's instructions regarding sleep hygiene. *See* Tr. 353.

The ALJ expressly recognized Plaintiff's testimony that movement exacerbated her pain. Plaintiff's real charge, then, is the ALJ failed to give full credit to her reasons for not following prescribed treatment. Plaintiff cites no legal authority, nor does she provide any evidence from the record that persuades the undersigned the ALJ was required to accept her reasons for not following prescribed treatment.[4] "An individual's statement of symptoms alone are not enough to establish the existence of a . . . disability." SSR 16-3p, WL 5180304 at *2. Once an ALJ determines a claimant has a medically determinable impairment that "could reasonably be expected to produce pain or other symptoms[,]" the ALJ will then "examine the entire case record" in order to "evaluate the intensity and persistence of the claimant's symptoms such as pain and determine the extent to which . . . [her] symptoms limit . . . her ability to perform work-related activities. . . ." *Id*. at *4. Ultimately, the ALJ will "evaluate whether the [claimant's] statements are consistent with objective medical evidence and the other evidence." *Id.* at *6. In

---

[4] In her reply brief, Plaintiff contends the ALJ failed to discuss reasons for her noncompliance and whether compliance would have restored her ability to work. Pl.'s Rely Br. 1-2. However, Plaintiff clearly conflates the issue presented in this case with the circumstance where a condition is found to be disabling, yet disability benefits are denied because the claimant failed to follow prescribed treatment. Pursuant to SSR 18-3P, "an individual who meets the requirements to receive disability . . . benefits will not be entitled to these benefits if the individual fails, without good cause, to follow prescribed treatment that . . . [is] expect[ed] . . . [to] restore his or her ability to engage in substantial gainful activity (SGA)." 2018 WL 4945641, at *2. However, the ALJ must follow various requirements before making a finding of noncompliance. *See id*. at *4–5. An ALJ is required to follow SSR 18-3P if the RFC determination or the ultimate disability determination was based, either implicitly or explicitly, on the claimant's noncompliance with prescribed treatment. *Cf. Emmitt v. Saul*, No. 4:17-CV-2953, 2019 WL 3500558, at *11 (S.D. Tex. Aug. 1, 2019) ("SSR 82-59 applies when the ALJ's RFC determination or the ultimate disability determination rests on the Plaintiff's failure to follow prescribed treatment."). Of course, here, Plaintiff has made no showing the ALJ had to follow the requirements of SSR 18-3P. *See Payne v. Saul*, Case No. 19-CV-1206-SCD, 2020 WL 4015609, at *5 (E.D. Wis. Jul. 16, 2020) (SSR 18-3p does not apply where the ALJ did not determine claimant would be disabled but for his noncompliance). Even assuming she has, this ruling clearly provides that "mere assertions or allegations about the effectiveness of the treatment are insufficient to meet the individual's burden to show good cause for not following the prescribed treatment." *Id.* at *6. As discussed below, the ALJ's physical RFC determination did not rest solely on the claimant's noncompliance.

this case, the ALJ followed the regulations. He expressly considered the claimant's subjective complaints about the limiting effects of her fibromyalgia pain and found they were inconsistent with "the medical evidence and other evidence" in the record.

Specifically, substantial evidence in the form of opinions by Disability Determination Service (DDS) doctors, who reviewed the medical evidence and opined the claimant could perform a range of light work with postural and environmental limitations, support the ALJ's physical RFC determination.[5] Tr. 80-89, 91-104. These physicians specifically considered limitations caused by the claimant's fibromyalgia. *See* Tr. 86-87, 98-100. The ALJ ascribed "significant weight" to the DDS physicians' physical RFC assessments because he found they were consistent with the evidence. Tr. 24. Interestingly, Plaintiff does not mention these opinions; nor does she challenge the weight the ALJ assigned to these opinions. Indeed, Plaintiff's suggestion the ALJ should consult with "appropriate experts" on remand hardly makes sense because this has already been done. Accordingly, I find the ALJ committed no error,[6] and substantial evidence supports his RFC determination.[7]

Plaintiff also contends that because there is evidence in the record that she had "good days and bad days," the ALJ had a responsibility to consider whether she would be able to

---

[5] Plaintiff cites *Pennington v. Astrue*, No. Civ. A. H-08-3616, 2010 WL 648413 (S.D. Tex. Feb. 2, 2010), in support of her contention the ALJ's RFC determination in this case is not supported by substantial evidence. However, *Pennington* is distinguishable because the ALJ's decision in that case was not based on a credible medical opinion, unlike the decision in this case. *See Pennington*, 2010 WL 648413, at *23.

[6] *See Johnson*, 864 F.2d at 347 ("[T]he Secretary, not the courts, has the duty to weigh the evidence, resolve material conflicts in the evidence, and decide the case.").

[7] Even assuming the ALJ failed to properly evaluate the claimant's subjective complaints, any error was harmless. "Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir. 2007) (citation and internal quotation marks omitted). Furthermore, procedural improprieties constitute a basis for remand only when the improprieties cast into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen,* 864 F.2d 333, 335 (5th Cir. 1988).

maintain employment. Pl.'s Br. 19. However, Plaintiff acknowledges the Fifth Circuit has made clear that an ALJ is not required in every case to make a separate finding that a social security claimant who is capable of performing a job will also be able to *maintain* that job. *See Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005); *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). In some cases, a medical impairment is of such a nature that separate consideration of whether the claimant is capable of maintaining employment is required. *Perez*, 415 F.3d at 465. Such a circumstance arises when, "by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms. *Id.* (citations omitted). Plaintiff contends that there is evidence that her condition "waxe[d] and wane[d]." Pl.'s Br. 19.

    In this case, I find Plaintiff has failed to show her condition required that the ALJ make a separate finding that she was able to maintain employment. According to authority cited by Plaintiff in her brief, not only must a claimant show she has a condition with symptoms that wax and wane but that evidence in the record demonstrates that her condition waxes and wanes "*in its manifestation of disabling symptoms.*" *See Watson v. Barnhart*, 288 F.3d 212, 217-18 (emphasis added). Plaintiff has failed to make a showing that her fibromyalgia manifested in symptoms that rendered her *disabled* at any points in time. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003). Instead, she is satisfied to rely on her fibromyalgia diagnosis and the general nature of the condition and only points to treatment notes related to flares of her condition that are several months apart. *See* Pl.'s Br. at 19-20. And Plaintiff gains nothing by suggesting her condition is similar to the plaintiff's in *Pennington*. First, that case does not represent binding authority. Second, I find that case is distinguishable because the plaintiff there presented evidence in the form of doctors' statements attesting to the dramatic difference in functioning the claimant experienced on her "good days" versus her "bad days." 2010 WL 648413, at *23-24.

Here, Plaintiff presents only her subjective reports; and, as noted above, the ALJ found they were disproportionate to other evidence in the record.

### 2. The ALJ did not commit reversible error in weighing Dr. Cole's opinion.

Here, Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence because he failed to properly weigh the opinion of Dr. H.W. Cole, a psychologist. Pl.'s Br. 21. Specifically, Plaintiff argues the ALJ did not properly weigh Dr. Cole's mental capacity assessment.[8] *Id.* at 21-22. Defendant points out that the ALJ explained why he assigned only "little" weight to Dr. Cole's opinion and contends that "[n]either Plaintiff nor the Court can reweigh the evidence and reach de novo findings." Def.'s Br. 7. While I agree with Plaintiff that the reasons provided by the ALJ do not square with the evidence, substantial evidence supports the mental limitations assigned by the ALJ.

Plaintiff was referred to Dr. Cole for a psychological evaluation as part of a screening process prior to moving forward with a treatment procedure at a pain clinic. Tr. 19, 924-25. In a report dated September 14, 2017, Dr. Cole opined that based on his evaluation of Plaintiff, there were "no psychological contraindications to attempting the proposed pain management procedure." *Id*. at 25. Later, on November 8, 2017, Dr. Cole completed a mental capacity assessment of Plaintiff. Tr. 928-930. Dr. Cole opined that Plaintiff had marked limitations in

---

[8] A treating source's opinion on the nature and severity of an impairment can be given controlling weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). The ALJ noted that Plaintiff no longer saw Dr. Cole. Tr. 24; 20 C.F.R. § 404.1527(a)(2) (treating source status requires an "ongoing treatment relationship"). *See also* 20 C.F.R. § 404.1527(a)(2) ("ongoing treatment relationship" is necessary to qualify as a treating source); *Hernandez v. Astrue*, 278 F. App'x 333, 338 n. 4 (5th Cir. 2008) (no "ongoing treatment relationship" when the doctor only examined the claimant two times during the insured period). Plaintiff spends a great deal of time in her brief expounding the treating physician rule but does not directly contend Dr. Cole was her treater. *See, e.g.*, Pl.'s Br. 23. In her brief, the Acting Commissioner contends Dr. Cole's November 2017 mental RFC assessment was not due the deference afforded treating physicians. Def.'s Br. 9. Plaintiff offered no response in her reply brief; and, when pressed on the point during oral argument, counsel for Plaintiff did not squarely contend Dr. Cole was Plaintiff's treating physician. I agree with Defendant that Dr. Cole was not Plaintiff's treating physician.

her ability to remember locations and work-like procedures and in her ability to understand and remember detailed instructions but moderate limitations in her ability to understand and remember very short and simple instructions. *Id.* Dr. Cole opined that Plaintiff had marked limitations in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. *Id.* However, she had moderate limitations in her ability to sustain an ordinary routine without special supervision. *Id.* He further opined that Plaintiff had extreme limitations in her ability to complete a normal workday or workweek without interruptions form psychologically based symptoms; marked limitations in her ability to perform at a consistent pace with a standard number and length of rest periods; and moderate limitations in her ability to work in coordination with or in proximity to others without being distracted by them. *Id.* Dr. Cole opined that Plaintiff would be absent 4 or more days per month. *Id.* He also opined that Plaintiff had moderate limitations in her ability to accept instructions and respond appropriately to criticism from supervisors and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.* Plaintiff had marked limitations in her ability to set realistic goals or make plans independently of others and moderate limitations in her ability to respond appropriately to changes in the work setting and in her ability to travel to unfamiliar places or use public transportation. *Id.*

> The ALJ's evaluation of Dr. Cole's functional capacity assessment was as follows:
>
> Dr. Cole opined the claimant had extreme and marked limitations in some of her mental functioning (Exhibits 11F, and 12F). The undersigned gives this opinion little weight, as it is inconsistent with his finding she had no problem with her proceeding with the pain clinic. The opinion is also unsupported by objective evidence, but rather by subjective reporting. Additionally, the claimant no longer sees Dr. Cole.

Tr. 24. As noted above, the ALJ afforded Dr. Cole's opinion "little weight" and concluded Plaintiff had the RFC to perform a reduced range of light work to include the following mental limitations: "simple work and no fast-paced work such as production work."[9] Tr. 22.

An ALJ may assign little weight or no weight to a physician's opinion "for good cause; good cause includes disregarding statements that are brief and conclusory or otherwise unsupported by the evidence." *See Dise v. Colvin*, 630 F. App'x 322, 326 (5th Cir. 2015) (citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994)). With this standard in view, I find the ALJ erred in his assessment of Dr. Cole's opinion. First, the ALJ's finding that Dr. Cole's mental capacity assessment was somehow inconsistent with or undermined his finding that Plaintiff had no psychological contraindications for attempting a pain management procedure is not supported by a logical explanation. The ALJ provided no explanation as to how Plaintiff's psychological fitness for pain management treatment supported the conclusion she could perform the mental demands for work in a competitive work environment. Next, I find the ALJ's conclusion that Dr. Cole's opinion was unsupported by objective evidence and based, rather, on Plaintiff's subjective reports is itself unsupported. During a mental examination of Plaintiff in April 2017, Dr. Cole made notations of several items that were within normal limits. Nevertheless, he noted the claimant's mood was dysphoric and made the following statement:

> She was able to comprehend and respond relevantly to the test items and displayed a cooperative test-taking attitude. Responses indicated genuine, severe psychological difficulties and credible symptoms. There was no evidence of under- or over-reporting. She presented a diffuse pattern of somatic complaints involving multiple bodily systems . . . . She is preoccupied with physical health concerns and prone to developing physical symptoms in response to stress.

---

[9] On January 18, 2017, the SSA adopted new rules which, for claims filed after March 27, 2017, modified the rules regarding hierarchy of physicians' opinions. 82 F.R. 5844, 5869-70 (1-18-2017); 20 C.F.R. § 404.1520c. Because this claim was filed January 19, 2017, the new rules do not apply here. *Id.*

*Id.* at 924-25. Dr. Cole's statement above indicates that responses to specific questions on a psychological test indicated "genuine, severe psychological difficulties." Moreover, Dr. Cole explicitly found there was no *evidence* of under- or over-reporting. Lastly, Dr. Cole ended his report with a statement that emphasized that the recommendations in his report were "*carefully considered clinical opinions based on results of standardized objective measurements of a psychological nature and structured psychological interviews*." *Id.* at 25. These statements by Dr. Cole contradict the ALJ's conclusion that Dr. Cole's assessment was based only on the claimant's subjective complaints and not based on any objective evidence.

Notwithstanding the foregoing, substantial evidence in the form of a DDS medical opinion supports the mental limitations assigned by the ALJ. *Cf. Audler*, 501 F.3d at 448 ("having determined that the ALJ erred in failing to state any reason for her adverse determination . . ., we must still determine whether this error was harmless."). Stephen P. Saxby, Ph.D., reviewed the claimant's file, including but not limited to Dr. Cole's records, and concluded the claimant was capable of "simple unskilled work." Tr. 96-97, 100-102. Therefore, despite any error committed by the ALJ, substantial evidence in the record supports the mental limitations assigned by him. *Cf. Stephens v. Barnhart*, 174 Fed. App'x 232, 233 (5th Cir. 2006) (upholding ALJ's decision not to assign substantial weight to a doctor's opinion because there was substantial evidence in the form of medical expert's notation that other evidence of record conflicted with doctor's opinion). The Court may not reweigh the evidence but may "scrutinize the record to determine whether it contains substantial evidence to support the" ALJ's decision. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Accordingly, Plaintiff has failed to persuade the undersigned that her second assignment of error requires that this case be remanded.

## Conclusion

Based on the foregoing, it is recommended that the Commissioner's final decision be affirmed.

## IV. PROCEDURE FOR FILING OBJECTIONS

The parties are referred to L. U. Civ. R. 72(a)(3) for the applicable procedure in the event any party desires to file objections to the findings and recommendations herein contained. The parties are warned that any such objections are required to be in writing and must be filed within fourteen (14) days of this date. Failure to timely file written objections to the proposed findings, conclusions and recommendations contained in this report will bar an aggrieved party, except upon grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Respectfully, submitted this 23rd day of August, 2021.

/s/ Jane M. Virden
U.S. Magistrate Judge